# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ANTHONY K. BOLLING,

    Petitioner,  : Case No. 3:20-cv-167

 - vs -    District Judge Walter H. Rice
        Magistrate Judge Michael R. Merz

NORM ROBINSON, Warden,
 London Correctional Institution

           :
    Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Anthony Bolling pursuant to 28 U.S.C. § 2254, is before the Court for decision on the Petition (ECF No. 4), the State Court Record (ECF No. 8), the Return of Writ (ECF No. 9), and the Petitioner's Reply (ECF No. 13).

**Jurisdiction**

Bolling seeks relief from his conviction in the Montgomery County Court of Common Pleas in its Case No. 2003-CR-0073 on four counts of forcible rape of a child under thirteen and one count of felonious sexual penetration of the same victim (Petition, ECF No. 4, PageID 32). Our habeas corpus jurisdiction is found in 28 U.S.C. § 2241, but is limited by 28 U.S.C. § 2244(b) which provides that a petitioner must receive circuit court permission before we can consider a second or successive habeas petition related to the same conviction.

1

Bolling has twice before unsuccessfully sought federal habeas relief from this 2003 conviction in *Bolling v. Warden,* Case 3:10-cv-114 and *Bolling v. Morgan,* Case No. 3:13-cv-116. However, the Common Pleas Court entered an amended *nunc pro tunc* judgment of conviction February 5, 2018, solely to impose post-release control should Bolling ever be released from his life sentences (State Court Record, ECF No. 8-1, PageID 840-43). Respondent concedes that this new judgment re-starts the statute of limitations and the second-or-successive counter under binding Sixth Circuit precedent (Return, ECF No. 9, PageID 2348, citing *In re Stansell*, 828 F.3d 412 (6th Cir. 2016) and *Crangle v. Kelly*, 838 F.3d 673 (6th Cir. 2016). This Court therefore has jurisdiction to consider the instant Petition.

**Litigation History**[1]

On January 15, 2003, a Montgomery County, Ohio grand jury indicted Bolling on four counts of violating Ohio Revised Code § 2907.02(A)(1)(b) by rape by force of a person less than 13 years of age, and one count of violating Ohio Revised Code § 2907.12(A)(1)(b) by felonious sexual penetration by force of a person less than 13 years of age. (Indictment, State Court Record, ECF No. 8, PageID 66-69). A jury convicted Bolling on all five counts and he was sentenced to life imprisonment on each count with the first three counts concurrent, the latter two counts concurrent, but the two groups consecutive to each other.

On direct appeal the convictions were affirmed. *State v. Bolling,* 2005-Ohio-2509 (Ohio App. 2d Dist. May 25, 2005). The Supreme Court of Ohio accepted review but later dismissed the

---

[1] Respondent has filed a detailed litigation history as part of the Return, the accuracy of which Bolling does not contest. This portion of the Report summarizes the litigation history.

review as improvidently granted. *In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313 (2006), *cert. den. sub nom. Bolling v. Ohio*, 549 U.S. 852 (2006).

Bolling's motion for leave to file a delayed motion for new trial, filed July 5, 2006, was unsuccessful at all levels of the Ohio court system. Decision and Entry, State Court Record, ECF No. 8, Ex. 35; *State v. Bolling,* 2007-Ohio-5976 (Ohio App. 2nd Dist. Nov. 9, 2007), appellate jurisdiction declined, 117 Ohio St. 3d 1440 (2008).

On January 31, 2011, Bolling filed a *pro se* motion to dismiss for speedy trial violation, speedy sentencing violation, and lack of final appealable order which was also unsuccessful at all stages of the state court process. Decision and Entry, State Court Record, ECF No. 8, Ex. 64; *State v. Bolling*, 2011-Ohio-6487 (Ohio App. 2nd Dist. Dec. 16, 2011), appellate jurisdiction declined, 131 Ohio St.3d 1511 (2012).

On July 27, 2017, Bolling filed a motion for resentencing and a motion for a final appealable order. (Motion, ECF No. 8-1, Ex. 78). The State conceded that Bolling was entitled to an amended judgment but not *de novo* re-sentencing. *Id.* at Ex. 79. The trial court accepted the State's position and entered the judgment at issue in this proceeding. *Id.* at Exs. 84, 85. The Second District affirmed. *State v. Bolling,* 2019-Ohio-227 (Ohio App. 2nd Dist. Jan. 25, 2019), appellate jurisdiction declined, 155 Ohio St. 3d 1439 (2019).

Bolling then timely filed his instant Petition, pleading the following grounds for relief:

> **Ground One:** The Petitioner was denied his right to confront and cross examine his accuser and another witness in violation of the Fifth and Sixth Amendment to the United States Constitution.
>
> **Supporting Facts**: The Petitioner was denied the opportunity to test the credibility of the accusing witness in front of the jury and he was further denied the opportunity to question the lead detective regarding the lack of investigation prior to arrest. The trial court held that questioning the accuser on her propensity for lying could only be done outside of the presence of the jury, denying the defendant a meaningful opportunity at adversarial testing. The Defendant was additionally prohibited from questioning the accusing witness as to

whether she had tampered with a key piece of evidence. Petitioner's Confrontation rights were further violated when the trial court restricted his ability to question the lead detective as to why he had destroyed audio tapes of witness interviews prior to trial. Petitioner was further restricted from questioning Detective Charles about inconsistencies in the accuser's story in further violation of his right to confront and cross examine his accuser.

**Ground Two**: The State committed prosecutorial misconduct and violated the Plaintiff's (sic) right to Due Process and a Fair Trial.

**Supporting Facts:**  The State prosecutor referred to the State's witness, Josh Hodson, as an expert witness and the State told the jury that Hudson was an expert when Hudson was never certified as an expert and was in fact a lay witness. The State deliberately misrepresented Hodson's status in order to give him the imprimatur of an expert witness without demonstrating that he had any expert knowledge and without having the court declare him to be an expert.

**Ground Three**: Petitioner was denied Due Process and his right to a fair trial because the indictment against him failed to put him on notice of the charges against him.

**Supporting Facts:**  The vague and generalized indictment precluded the Defendant from being able to present a meaningful defense.  The indictment failed to set forth any specific act at any specific time and the Defendant had to wait until mid-trial to learn the specifics of the accusations against him. Petitioner was unable to present an alibi defense or any meaningful defense because he was not put on fair notice of the crime charged in violation of his right to due process and a fair trial.

**Ground Four:** The Petitioner was denied his right to Due Process and a Fair Trial pursuant to the Fifth and Sixth Amendment to the United States Constitution when he was prohibited from cross examining his accuser for bias, but the prosecution was permitted to address the issue on rebuttal.

**Supporting Facts**: During the trial the Defendant proffered that his accuser had fabricated the claims against him because Petitioner had raised issues regarding her sexual involvement with Sean Hasty, an adult friend of the family. Petitioner attempted to demonstrate that the allegations against him had been fabricated in retaliation for Petitioner exposing this relationship to the accuser's mother. The trial court prohibited the cross examination on the grounds that it

4

violated the state's rape shield law. Then on rebuttal the State directly asked the accuser about the nature of her relationship with Sean Hasty, the same relationship that the Petitioner was prohibited from discussing by order of the Court. The rape shield law was used to benefit one party and to the detriment of another and its unequal application denied the Petitioner his Confrontation rights as well as denied him his right to due process and a fair trial.

**Ground Five:** Petitioner was denied the effective assistance of counsel as guaranteed by the Sixth Amendment when his trial counsel failed to investigate his case and failed to retain an expert witness to examine the State's confrontation tape.

**Supporting Facts:** The retention of an expert witness to examine the authenticity of the State's tape recording would have provided the Defendant with a viable defense and it would have permitted him to impeach the State's witnesses. Post-trial Defendant retained an expert witness who discovered a previously undisclosed conversation on the tape which proves that the accusing witness was lying when she asserted that she had taped the entire conversation and the lead detective lied when he asserted that he kept all of the recorded conversations. Further, retention of an expert witness would have made clear that the state's expert was not a qualified expert and he did not, as the State claimed. authenticate the tape. Bolling was prejudiced because the jury relied on unauthenticated evidence that has since been refuted by a qualified expert.

**Ground Six:** The Petitioner was denied his right to Due Process and a Fair Trial as guaranteed by the 5th, 6th, and 14th Amendment to the United States Constitution.

**Supporting Facts**: The State of Ohio denied the Petitioner Due Process – when it withheld the unedited and unaltered tape recording from the Defendant prior to trial. The tape the State turned over to the defense and presented the jury had been "enhanced" by the State's expert. Petitioner attempted for more than 10 years to get the unedited tape and succeeded in getting a copy of an 8-minute portion in 2017 and sent it to an expert for analysis. That analysis revealed the presence of an underlying previously undisclosed conversation that proves that the tape that was presented to the jury was not authentic and that witness testimony presented to the jury was not authentic and that witness testimony presented to the jury that the tape contained the entire conversation between the parties was a materially false statement.

(Petition, ECF No. 4, PageID 36-45.)

## Analysis

In his direct appeal from the judgment challenged in this case, Bolling raised the following four assignments of error:

> THE DEFENDANT'S RIGHTS TO CONFRONTATION AND CROSS-EXAMINATION WERE VIOLATED WHEN THE TRIAL COURT RESTRICTED HIS ABILITY TO CROSS-EXAMINE HIS ACCUSER AND THE LEAD DETECTIVE IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE U.S. CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
>
> THE STATE COMMITTED PROSECUTORIAL MISCONDUCT WHEN IT MISLED THE JURY TO BELIEVE THAT JOSH HODSON WAS AN EXPERT WITNESS WHEN HE WAS NEVER CERTIFIED AS AN EXPERT BY THE TRIAL COURT.
>
> THE APPELLANT'S RIGHT TO DUE PROCESS AND A FAIR TRIAL WERE VIOLATED BECAUSE THE INDICTMENT WAS INSUFFICIENT TO PUT THE DEFENDANT ON FAIR NOTICE OF THE CHARGES AGAINST HIM.
>
> THE DEFENDANT WAS DENIED THE RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL WHEN HE WAS PROHIBITED FROM ASKING THE ACCUSER ANY QUESTIONS ABOUT ANOTHER RELATIONSHIP AS EVIDENCE OF BIAS, BUT THE PROSECUTION WAS ALLOWED TO EXAMINE THE WITNESS ABOUT THE RELATIONSHIP ON REBUTTAL.

*Bolling*, 2019-Ohio-227, ¶ 14. These Assignments of Error map to Petitioner's First, Second, Third, and Fourth Grounds for Relief respectively. The Second District Court of Appeals declined to reach these four Assignments of Error on the merits because it found

> [*P15] Upon review, we find res judicata applicable to these arguments. The doctrine bars re-litigation of matters that either were raised in a prior appeal or could have been raised in a prior appeal. *State v. McCoy*, 2d Dist. Greene No. 04CA112, 2005-Ohio-6837, ¶ 15. Even if Bolling's remaining four assignments of error addressed new arguments that he did not raise previously, he could have raised

> them in his direct appeal in *Bolling I*. Therefore, any issues regarding the original indictment and the admission and/or exclusion of evidence by the trial court are barred by res judicata. Furthermore, res judicata applies to all of the other aspects of the merits of Bolling's convictions, including the determination of guilt and the lawful elements of the ensuing sentence. See *Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, paragraph three of the syllabus.

*Id.* at ¶ 15. Respondent relies on this *res judicata* holding to assert that Bolling's First, Second, Third and Fourth Grounds for relief have been procedurally defaulted.

Bolling argues that *res judicata* does not apply because the State could have foregone the changes it made to his judgment (adding post-release control, the reasons for consecutive sentences, and noting that conviction was based on a jury verdict), but that it did not so and is therefore precluded from relying on *res judicata*. (Reply, ECF No. 13, PageID 2427, citing *Arizona v. California*, 460 U.S. 605 (1983)). Moreover, he asserts, "when a state court declines to review the merits of a Petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review. *Cone v. Bell*, 556 U.S. 449, 466-67 (2009)." *Id.*

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). "Absent cause and prejudice, 'a federal

7

habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.'" *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000), quoting *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87.

> [A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule. E.g., *Beard v. Kindler*, 558 U.S. 53, 55, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009). This is an important "corollary" to the exhaustion requirement. *Dretke v. Haley*, 541 U.S. 386, 392, 124 S.Ct. 1847, 158 L.Ed. d 659 (2004). "Just as in those cases in which a state prisoner fails to exhaust state remedies, a habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address" the merits of "those claims in the first instance." *Coleman* [*v. Thompson*], 501 U.S. [722,] 731-732, 111 S.Ct. 2546, 115 L.Ed.2d 640 [(1991)]. The procedural default doctrine thus advances the same comity, finality, and federalism interests advanced by the exhaustion doctrine. See *McCleskey v. Zant*, 499 U.S. 467, 493, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

*Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster*

8

> *County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner can overcome a procedural default by showing cause for the default and prejudice from the asserted error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

Ohio criminal law has a relevant procedural rule: an issue which was presented on direct appeal and decided or which could have been presented on direct appeal but was not will not later be considered on the merits by the Ohio courts; it is barred by *res judicata*. *State v. Perry,* 10 Ohio St. 2d 175 (1967). The Second District Court of Appeals applied that rule to Bolling's Second, Third, Fourth, and Fifth Assignments of Error, enforcing the *Perry res judicata* rule. The Sixth Circuit has repeatedly upheld the Perry *res judicata* rule as an adequate and independent state ground of decision. *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001).

Bolling does not offer any excusing cause and prejudice or any new evidence of actual innocence so as to excuse his procedural default. Instead he relies on the two cited Supreme Court cases.

9

*Arizona v. California*, 460 U.S. 605 (1983), was an original action in the Supreme Court between Arizona and California over water rights. The Court held that the federal doctrine of *res judicata* as applied to original actions in the Supreme Court prohibited relitigation of the factual issue of the amount of irrigable land on five Indian reservations.

> **It is clear that res judicata and collateral estoppel do not apply if a party moves the rendering court in the same proceeding to correct or modify its judgment.** 1B Moore para. 0.407, pp. 931-935; R. Field, B. Kaplan, & K. Clermont, Materials on Civil Procedure 860 (4th ed. 1978). Nevertheless, a fundamental precept of common-law adjudication is that an issue once determined by a competent court is conclusive. *Montana v. United States,* 440 U.S. 147, 153 (1979); *Federated Department Stores, Inc. v. Moitie,* 452 U.S. 394, 398 (1981); *Cromwell v. County of Sac,* 94 U.S. 351, 352-353 (1877). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, supra, at 153-154.

460 U.S. at 619. As shown in bold face in this quotation, the opinion in *Arizona v. California* does include the language quoted by Bolling, but it is in the context of a general discussion of *res judicata*, not in deciding whether a State may adopt *res judicata* as a bar to relitigation of issues in criminal cases. As noted above, the Sixth Circuit has repeatedly upheld the *res judicata* doctrine of *State v. Perry* and the Supreme Court has never held to the contrary.

*Cone v. Bell*, 556 U.S. 449 (2009), was a capital habeas corpus case from Tennessee. Analyzing Tennessee's law on prior litigation of issues in criminal cases, Justice Souter wrote:

> Under Tennessee law in effect at the time, a criminal defendant was entitled to collateral relief if his conviction or sentence violated "any right guaranteed by the constitution of [Tennessee] or the Constitution of the United States." Tenn. Code Ann. § 40-30-105 (1982); see also § 40-30-102. Any hearing on a petition for postconviction relief was limited, however, to claims that had not been "waived or previously determined." See § 40-30-111. A ground for relief was "previously determined" if "a court of competent jurisdiction ha[d] ruled on the merits [of the claim] after a full and

10

> fair hearing." § 40-30-112(a). The claim was waived "if the petitioner knowingly and understandingly failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." § 40-30-112(b)(1).

556 U.S. at n. 8. Thus Tennessee law is different from Ohio law. Tennessee courts will not consider the merits of a constitutional claim on collateral attack if (1) they have already ruled once on the merits or (2) the defendant has voluntarily waived such a determination. Under Ohio law, in contrast, a defendant loses (forfeits) an opportunity for a state court decision on the merits of a claim if he could have raised it on direct appeal but failed to do so. Ohio law does not require that the opportunity be waived by a defendant's knowing and voluntary act.[2]

Because Bolling could have but did not present his First, Second, Third, and Fourth Grounds for Relief on direct appeal, they are procedurally defaulted and should be dismissed with prejudice on that basis.

**Ground Five: Ineffective Assistance of Trial Counsel**

In his Fifth Ground for relief, Bolling claims he received ineffective assistance of trial counsel when his trial attorney did not adequately investigate his case and, in particular, did not hire an expert to forensically analyze a tape recording of a conversation between Bolling and the victim.

Respondent asserts Bolling failed to exhaust this claim in the state courts and thereby procedurally defaulted it (Return, ECF No. 9, PageID 2395). Bolling claims, however, that he

---

[2] The distinction between waiver and forfeiture is explained by the Supreme Court as follows: N. 4: "We note here the distinction between defenses that are 'waived' and those that are 'forfeited.' A waived claim or defense is one that a party has knowingly and intelligently relinquished; a forfeited plea is one that a party has merely failed to preserve. *Kontrick v. Ryan*, 540 U.S. 443, 458, n. 13 (2004); *United States v. Olano,* 507 U.S. 725, 733 (1993).

11

appropriately presented this claim in the petition for post-conviction relief he filed after the 2018 judgment (Reply, ECF No. 13, PageID 2443, citing State Court Record, ECF No. 8-1, Ex. 99). The trial court dismissed the petition on grounds that it was untimely, concluding the February 2018 judgment did not re-set the Ohio statute of limitations on petitions for post-conviction relief. *Id.* at Ex. 102. On appeal the Second District held that the new judgment did not re-set the statute of limitations and that the trial court did not have jurisdiction to consider the petition under Ohio Revised Code § 2953.23 because Bolling had not shown he was unavoidably prevented from obtaining the evidence on which he relied, i.e., the forensic expert's analysis of the audiotape. *State v. Bolling*, 2019-Ohio-4093 (Ohio App. 2nd Dist. Oct. 4, 2019), appellate jurisdiction declined, 2020-Ohio-122 (2020).

Bolling argues:

> The state courts denial on timeliness grounds is misplaced and is a result of the state court's refusal to acknowledge the 2018 Termination Entry as the binding judgment in this case. Bolling filed within one year of that decision. The Judgment was file on February 5, 2018 and the petition for post conviction relief was filed on October 25, 2018, well within the one-year statute of limtations [sic].

(Reply, ECF No. 13, PageID 2443-44.)

Questions of the interpretation of the Ohio post-conviction statute, including its limitations period, are questions of state law on which this Court is bound by state court decisions. *Bradshaw v. Richey*, 546 U.S. 74 (2005). Although federal law treats the new judgment as restarting the federal statute of limitations and the second-or-successive counter for purposes of federal court jurisdiction, state courts are under no federal constitutional obligation to do the same.

State statutes of limitations are adequate and independent state grounds for decisions of constitutional questions. Here the Second District enforced the limitations provisions in Ohio

Revised Code § 2953.21 and .23 against Bolling and he has offered no excusing cause and prejudice. In fact, as the Second District pointed out, Bolling had had the allegedly tampered-with audiotape before trial in 2003. Ground Five should therefore be dismissed with prejudice as procedurally defaulted.

**Ground Six: Denial of Discovery of Exculpatory Material**

In his Sixth Ground for Relief, Bolling claims his right to a fair trial and due process of law were violated by the State's failure to produce the original audiotape before trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). In reply to Respondent's defenses, Bolling makes it very clear that he is raising a *Brady* claim:

> The Respondent alleged defenses lack merit. Respondent asserts that a federal constitutional claim was not presented to the state court or exhausted . This claim was presented to the state court. (Doc. 8-1, PageID #947-958). It was also presented on appeal to the Ohio Court of appeals and the Supreme Court of Ohio. (Doc. 8-1, PageID #1019-1035, 1074-89). Contrary to Respondent's assertion, the claim was clearly presented to each court as a federal constitutional claim. Respondent also cites to *Cress v. Palmer*, 484 F.3d 644, 853 (6th Cir. 2007) and *Kirby v. Dutton*, 794 F.2d 245 (6th Cir. 1 986) and claims that they stand for the proposition that any claim presented in a collateral attack cannot be presented in a habeas petition. While a creative argument, neither case goes that far. Bolling is not presenting errors in a collateral proceeding, such as lack of counsel in *Kirby* or hearing requirements in *Cress* to this Court. Rather, the claim presented here is a *Brady* violation, a violation that clearly can be presented in a habeas petition.

(Reply, ECF No. 13, PageID 2448). The cited pages of the trial court record (PageID 947-58) are to Bolling's most recent motion for leave to file a delayed motion for new trial. Bolling's claim there is that the expert opinion of his retained audio forensic expert is "newly discovered" so as to satisfy the test in Ohio R. Crim. P. 33 for a delayed motion for new trial. There is a passing citation

13

to *Brady* as part of a claim that the State, at the time of trial, had destroyed "potentially exculpatory evidence" by not maintain the audiotape in its "original" condition, but the constitutional claim being made in that filing is not a *Brady* claim, but an ineffective assistance of trial counsel claim.

Bolling raised denial of his motion for leave to file a delayed motion for new trial as his first assignment of error on appeal and the Second District decided it as follows:

> First Assignment of Error
>
> [*P17]  Under his first assignment of error, Bolling contends that the trial court erred in overruling his motion for new trial without first ruling on his motion for leave to file a delayed motion for new trial. Bolling also contends that, even if this court finds that the trial court properly addressed his motion for leave, the trial court nevertheless erred in overruling it. We disagree.
>
> [*P18]  As previously noted, Bolling simultaneously filed a motion for leave to file a delayed motion for new trial and a motion for new trial based on newly discovered evidence. Pursuant to Crim.R. 33(A)(6), a convicted defendant is permitted to file a motion for new trial on grounds that "new evidence material to the defense has been discovered that the defendant could not with reasonable diligence have discovered and produced at trial." *State v. Parker,* 178 Ohio App.3d 574, 2008-Ohio-5178, 899 N.E.2d 183, ¶ 15 (2d Dist.). There is, however, a specific time limitation in which a motion for new trial based on newly discovered evidence must be filed. Pursuant to Crim.R. 33(B), "[m]otions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered[.]"
>
> [*P19]  "In order to file a motion for new trial beyond the 120-day time limitation specified in Crim.R. 33(B), a defendant must first seek leave of the trial court to file a delayed motion." (Citations omitted.) *State v. Moore*, 2d Dist. Clark No. 2017-CA-49, 2018-Ohio-318, ¶ 16. Crim.R. 33(B) does not prescribe a specific timeframe for when a motion for leave must be filed, but this court has held that it must be filed "within a reasonable time" after a defendant discovers the new evidence on which his motion for new trial is based. (Citations and emphasis omitted.) *State v. York,* 2d Dist. Greene No. 2000 CA 70, 2001-Ohio-1528, 2001 WL 332019, *4 (Apr. 6, 2001). Accord *State v. Warren,* 2d Dist. Montgomery No. 28092, 2019-Ohio-3522, ¶ 72 and 74.

[*P20] "To obtain leave to file a delayed motion for new trial, the defendant 'must demonstrate by clear and convincing evidence that he or she was unavoidably prevented from timely filing the motion for a new trial or discovering the new evidence within the time period provided by Crim.R. 33(B).'" *Moore* at ¶ 17, quoting *State v. Warwick,* 2d Dist. Champaign No. 01CA33, 2002-Ohio-3649, 2002 WL 1585663, *2 (July 19, 2002). Clear and convincing evidence is "'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of fac[t] a firm belief or conviction as to the facts sought to be established.'" *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990), quoting *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. (Other citation omitted.)

> "'[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.'"

Parker at ¶ 16, quoting *State v. Walden*, 19 Ohio App.3d 141, 145-146, 19 Ohio B. 230, 483 N.E.2d 859 (10th Dist.1984).

[*P21] This court reviews a trial court's ruling on a motion for leave to file a delayed motion for new trial for an abuse of discretion. *State v. Risden,* 2d Dist. Montgomery No. 25234, 2013-Ohio-1823, ¶ 11. "'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." (Citation omitted.) State v. Wilson, 2d Dist. Montgomery Nos. 24461, 24496, 24501, 2012-Ohio-1660, ¶ 29. "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id*.

[*P22] In this case, almost 15 years after his verdict was rendered, Bolling simultaneously filed a motion for leave to file a delayed motion for new trial and a corresponding motion for new trial. Because his motion for new trial was clearly untimely, as part of his motion for leave, Bolling was required to demonstrate that he was unavoidably prevented from timely filing his motion for new trial.

15

As previously noted, "a party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence." *Walden* at 145-146.

[*P23] Here, Bolling's motion for new trial was based on newly obtained evidence from a forensic audio expert who analyzed the audiotaped telephone conversations between Bolling and the victim. The pertinent portion of the expert's analysis concluded that there were previous statements on the audio recording that had been "deleted, erased over or otherwise omitted." However, after a thorough review of the record, we find that even without the newly obtained expert analysis, Bolling was aware of the fact that there were previously recorded statements on the audiotape before his trial.

[*P24] The record establishes that Bolling received the audiotape from the State prior to trial. After receiving the audiotape, the record indicates that on May 8, 2003, Bolling filed a motion in limine in which he moved the trial court to suppress the admission of the audiotape on grounds that the "the tape may have been tampered with." Motion in Limine Suppressing State's Witness and Evidence (May 8, 2003), Montgomery C.P. No. 2003-CR-0073, p. 1. Thereafter, on July 29, 2003, Bolling also filed a pretrial motion for an evidentiary hearing in which he argued the following:

> Previously it was disclosed that the same detective left an undisclosed number of tapes with the complaining witness and her mother and instructed them to tape the defendant's conversations. It is unclear how many tapes the detective left with the complainant and her mother and it is unclear what instructions he gave them but it is uncontroverted that the complainant's mother and perhaps the complainant taped a least one conversation and then used the same tape to tape over it. The Defendant, if called to testify for the limited purpose of this issue, would testify as to the nature of the conversations that were probably taped and the topics thereof. It is submitted that the Defendant's remarks and the topics discussed during the erased conversations were exculpatory in nature.

(Emphasis added.) Motion and Demand for Evidentiary Hearing (July 29, 2003), Montgomery C.P. No. 2003-CR-0073, p. 2. Therefore, the record indicates that Bolling had knowledge of the

16

existence of the ground supporting his motion for new trial as early as May or July 2003.

[*P25] The fact that Bolling was aware of the issue with the audiotape during trial was also alluded to in several of his post-conviction motions. In his 2008 motion to access the audiotape under R.C. 149.43, Bolling noted that "the creation of these tapes were erased in the creation of the tape [that] was ultimately used in evidence." was not only in dispute, but the complaining witness almost inadvertently let slip during cross examination that, in fact, several phone conversations were recorded and some Similarly, in the motion for new trial at issue in this appeal, Bolling also noted that he "testified at trial about these other conversations, in fact he testified that there were more than 20 conversations with [the victim's mother] during the time period in which the recording was made" and "that there was an extensive conversation with [the victim] in the so-called 'confrontation tape' call prior to her turning the recorder on."

[*P26] Although Bolling had longstanding knowledge of the ground supporting his motion for new trial, Bolling provides no reasonable excuse for why it took him over 14 years to obtain the audiotape and have it analyzed. The record indicates that Bolling did not request the audiotape for forensic analysis until 2008 when he filed his R.C. 149.43 motion. Bolling therefore waited five years after his conviction to request the audiotape. Bolling fails to explain why he never attempted to obtain the audiotape earlier so that he could have addressed it in his first motion for new trial, which he filed in 2006.

[*P27] The record also indicates that in September 2010, Bolling's brother and two other individuals successfully obtained copies of the audiotape as part of a Freedom of Information Act request, but then took no action on the matter for six years. It was not until September 2016, that Bolling's brother filed a subsequent motion requesting the original audiotape on grounds that the copy provided by the court administrator was insufficient for audio analysis. Bolling provided no explanation for the six-year delay. Although Bolling averred that his brother was able to obtain a sufficient copy of the audiotape in April 2017, Bolling fails to explain why a sufficient copy of the audiotape could not have been requested and obtained earlier.

[*P28] For the foregoing reasons, the trial court did not abuse its discretion in overruling Bolling's motion for leave to file a delayed motion for new trial. More specifically, it was not unreasonable for

17

> the trial court to find that Bolling was not unavoidably prevented from filing his motion for new trial when, for over 14 years, Bolling knew about the issue with the audiotape on which his motion for new trial was based and failed to request and obtain a copy of the audiotape for analysis within a reasonable time.
>
> [*P29] Moreover, contrary to Bolling's claim otherwise, the fact that the trial [court] overruled the motion for new trial, as opposed to the motion for leave, is immaterial. It is clear from the trial court's written decision that the court found Bolling's motion for new trial untimely and that Bolling was not unavoidably prevented from filing the motion. Because the trial court's holding reflects the appropriate Crim.R. 33(B) standard for granting or denying leave, and because the merits of Bolling's motion for new trial were never addressed, we find that the trial court's decision properly ruled on Bolling's motion for leave to file a delayed motion for new trial.
>
> [*P30] Bolling's first assignment of error is overruled.

*Bolling*, 2019-Ohio-4093. One searches this portion of the opinion in vain for any indication the Second District understood it was deciding a *Brady* claim.

To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.), *cert. denied,* 509 U.S. 907 (1993), overruled in part on other grounds by *Thompson v. Keohane,* 516 U.S. 99 (1995); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

> Principles of comity require that we not seek to upset a state court conviction on the basis of an alleged constitutional violation that the state court never had an opportunity to correct. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982). "Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." *Lyons v. Stovall*, 188 F.3d 327, 331–32 (6th Cir. 1999) (quoting *Picard v. Connor*, 404 U.S. 270, 276

18

>> (1971)). "[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review." *Awkal v. Mitchell*, 613 F.3d 629, 646 (6th Cir. 2010) (en banc) (quoting *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002)).

*Allen v. Mitchell*, 953 F.3d 858 (6th Cir. 2020).

Because Bolling did not fairly present his Brady claim to the Second District Court of Appeals on his appeal from denial of his motion for leave to file a delayed motion for new trial, he has procedurally defaulted that claim and it should be dismissed with prejudice.

**Conclusion**

In accordance with the foregoing analysis, the Magistrate Judge recommends that the Petition be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

September 24, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report

19

and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.