# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

ANTHONY K. BOLLING,

              Petitioner,     :     Case No. 3:20-cv-167

    - vs -                          District Judge Walter H. Rice
                                         Magistrate Judge Michael R. Merz

NORM ROBINSON, Warden,
  London Correctional Institution

                                     :
              Respondent.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

      This habeas corpus case is before the Court on Petitioner Anthony Bolling's Objections (ECF No. 15) to the Magistrate Judge's Report and Recommendations on the merits (the "Report," ECF No. 14). District Judge Rice has recommitted the case to the Magistrate Judge for reconsideration in light of the Objections (ECF No. 16).

      This is Bolling's third habeas corpus petition[1] attacking his 2003 conviction on four counts of forcible rape and one count of forcible felonious sexual penetration of a child under thirteen and the consequent life sentences he is now serving. As the State concedes, he was not required to obtain circuit court permission under 28 U.S.C. § 2244(b) to proceed with this third-in-time petition because he obtained a new judgment in his criminal case on February 2, 2018 ((hereinafter "*Nunc Pro Tunc* Judgment"), State Court Record, ECF No. 8-1, Ex. 85.) That judgment re-set the

---

[1] The two prior cases are *Bolling v. Warden,* Case 3:10-cv-114, and *Bolling v. Morgan,* Case No. 3:13-cv-116.

1

federal second-or-successive counter and statute of limitations, per *Magwood v. Patterson*, 561 U.S. 320, 331-32 (2010). Thus this Court has jurisdiction to decide the instant case. The Report reached this conclusion and neither party has objected.

The Petition pleads the following Grounds for Relief:

> **Ground One:** The Petitioner was denied his right to confront and cross examine his accuser and another witness in violation of the Fifth and Sixth Amendment to the United States Constitution.
>
> **Supporting Facts**: The Petitioner was denied the opportunity to test the credibility of the accusing witness in front of the jury and he was further denied the opportunity to question the lead detective regarding the lack of investigation prior to arrest. The trial court held that questioning the accuser on her propensity for lying could only be done outside of the presence of the jury, denying the defendant a meaningful opportunity at adversarial testing. The Defendant was additionally prohibited from questioning the accusing witness as to whether she had tampered with a key piece of evidence. Petitioner's Confrontation rights were further violated when the trial court restricted his ability to question the lead detective as to why he had destroyed audio tapes of witness interviews prior to trial. Petitioner was further restricted from questioning Detective Charles about inconsistencies in the accuser's story in further violation of his right to confront and cross examine his accuser.
>
> **Ground Two**: The State committed prosecutorial misconduct and violated the Plaintiff's (sic) right to Due Process and a Fair Trial.
>
> **Supporting Facts:** The State prosecutor referred to the State's witness, Josh Hodson, as an expert witness and the State told the jury that Hudson was an expert when Hudson was never certified as an expert and was in fact a lay witness. The State deliberately misrepresented Hodson's status in order to give him the imprimatur of an expert witness without demonstrating that he had any expert knowledge and without having the court declare him to be an expert.
>
> **Ground Three**: Petitioner was denied Due Process and his right to a fair trial because the indictment against him failed to put him on notice of the charges against him.
>
> **Supporting Facts:** The vague and generalized indictment precluded the Defendant from being able to present a meaningful defense. The indictment failed to set forth any specific act at any specific time

and the Defendant had to wait until mid-trial to learn the specifics of the accusations against him. Petitioner was unable to present an alibi defense or any meaningful defense because he was not put on fair notice of the crime charged in violation of his right to due process and a fair trial.

**Ground Four:** The Petitioner was denied his right to Due Process and a Fair Trial pursuant to the Fifth and Sixth Amendment to the United States Constitution when he was prohibited from cross examining his accuser for bias, but the prosecution was permitted to address the issue on rebuttal.

**Supporting Facts**: During the trial the Defendant proffered that his accuser had fabricated the claims against him because Petitioner had raised issues regarding her sexual involvement with Sean Hasty. an adult friend of the family. Petitioner attempted to demonstrate that the allegations against him had been fabricated in retaliation for Petitioner exposing this relationship to the accuser's mother. The trial court prohibited the cross examination on the grounds that it violated the state's rape shield law. Then on rebuttal the State directly asked the accuser about the nature of her relationship with Sean Hasty, the same relationship that the Petitioner was prohibited from discussing by order of the Court. The rape shield law was used to benefit one party and to the detriment of another and its unequal application denied the Petitioner his Confrontation rights as well as denied him his right to due process and a fair trial.

**Ground Five:** Petitioner was denied the effective assistance of counsel as guaranteed by the Sixth Amendment when his trial counsel failed to investigate his case and failed to retain an expert witness to examine the State's confrontation tape.

**Supporting Facts:** The retention of an expert witness to examine the authenticity of the State's tape recording would have provided the Defendant with a viable defense and it would have permitted him to impeach the State's witnesses. Post-trial Defendant retained an expert witness who discovered a previously undisclosed conversation on the tape which proves that the accusing witness was lying when she asserted that she had taped the entire conversation and the lead detective lied when he asserted that he kept all of the recorded conversations. Further, retention of an expert witness would have made clear that the state's expert was not a qualified expert and he did not, as the State claimed. authenticate the tape. Bolling was prejudiced because the jury relied on unauthenticated evidence that has since been refuted by a qualified expert.

3

>**Ground Six:** The Petitioner was denied his right to Due Process and a Fair Trial as guaranteed by the 5th, 6th, and 14th Amendment to the United States Constitution.
>
>**Supporting Facts**: The State of Ohio denied the Petitioner Due Process – when it withheld the unedited and unaltered tape recording from the Defendant prior to trial. The tape the State turned over to the defense and presented the jury had been "enhanced" by the State's expert. Petitioner attempted for more than 10 years to get the unedited tape and succeeded in getting a copy of an 8-minute portion in 2017 and sent it to an expert for analysis. That analysis revealed the presence of an underlying previously undisclosed conversation that proves that the tape that was presented to the jury was not authentic and that witness testimony presented to the jury was not authentic and that witness testimony presented to the jury that the tape contained the entire conversation between the parties was a materially false statement.

(Petition, ECF No. 4, PageID 36-45.)

The Report recommended dismissing all six Grounds for Relief as procedurally defaulted, albeit on different bases. Bolling objects as to all six Grounds. This Supplemental Report discusses the three different grounds for dismissal separately.

## Analysis

**Grounds One through Four:  Barred by the Ohio Criminal *Res Judicata* Doctrine.**

Bolling raised his first four grounds for relief as Assignments of Error on appeal from the *Nunc Pro Tunc* Judgment. The Second District Court of Appeals refused to decide those Assignments on the merits, holding they were barred by Ohio criminal *res judicata* doctrine. *State v. Bolling,* 2019-Ohio-4093 (Ohio App. 2nd Dist. Oct. 4, 2019), appellate jurisdiction declined, 2020-Ohio-122 (2020). The Report recommended these four grounds be dismissed as procedurally defaulted because the Sixth Circuit has repeatedly upheld Ohio's application of *res judicata* in these

4

circumstances to be an adequate and independent state ground of decision which the federal habeas courts must respect. (Report, ECF No. 14, PageID 2493, citing *Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Buell v. Mitchell*, 274 F.3d 337 (6th Cir. 2001); *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 521-22 (6th Cir. 2000); *Rust v. Zent,* 17 F.3d 155, 160-61 (6th Cir. 1994)(citation omitted); *Van Hook v. Anderson*, 127 F. Supp. 2d 899, 913 (S.D. Ohio 2001)).

Bolling makes two objections. First he says the Report ignores *Magwood* and its progeny because it refuses to treat the *Nunc Pro Tunc* Judgment as a "new" judgment (Objections, ECF No. 15, PageID 2506). Not so. The Report does treat the *Nunc Pro Tunc* Judgment as a new judgment for the two purposes for which that counts in habeas corpus: (1) re-start of the federal statute of limitations in 28 U.S.C. § 2244(d) and (2) re-start of the second-or-successive counter in habeas in § 2244(b). Nothing in *Magwood* or its progeny requires the state courts to treat such a *nunc pro tunc* judgment as "new" for state law purposes, particularly any state statute of limitations or state criminal *res judicata* doctrine. Nothing in the Report suggests the Petition should be dismissed because it is untimely or second-of-successive under federal law.

Second, Bolling objects to the Report's asserted "refusal to follow the precedent on *res judicata* established by the Supreme Court of the United States in *Arizona v. California*, 460 U.S. 605 (1983) and *Cone v. Bell,* 566 U.S. 499 (2009)." (Objections, ECF No. 15, PageID 2506.) Bolling asserts the Report only distinguishes these cases on the facts and asks "Why would a habeas petitioner seeking relief from an unconstitutional conviction be afforded less due process than other civil litigants? The Report and Recommendation fails to offer any explanation as to why it would not apply, except that the facts are different."

This argument misreads the Report, which distinguishes these two Supreme Court cases on the law, not the facts.

5

*Arizona v. California* was an original[2] action in the Supreme Court over water rights in the Colorado River as between those two States and five Indian[3] nations. The Supreme Court held that the factual issue of the amount of irrigatable land in the reservations in question would not be relitigated. 460 U.S. at 620-21. As a basis for that conclusion, Justice White wrote "a fundamental precept of common-law adjudication is that an issue once determined by a competent court is conclusive. *Montana v. United States,* 440 U.S. 147, 153 (1979); *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981); *Cromwell v. County of Sac*, 94 U.S. 351, 352-353 (1877). In other words the Supreme Court applied *res judicata* to prohibit relitigation of an issue – the amount of irrigatable land – that had previously been litigated.

Bolling relied in his Reply on the prior sentence in Justice White's opinion: "It is clear that *res judicata* and collateral estoppel do not apply if a party moves the rendering court in the same proceeding to correct or modify its judgment." 460 U.S. at 619, citing 1B Moore para. 0.407, pp. 931-935; R. Field, B. Kaplan[4], & K. Clermont, Materials on Civil Procedure 860 (4th ed. 1978). That is indeed a general principle of common-law adjudication, but the Supreme Court has never made it a principle of federal constitutional law binding on the States in the administration of criminal justice. This Court cannot force the State of Ohio to abandon *res judicata* in criminal cases unless the Supreme Court of the United States commands it. Until then this Court must obey the Sixth Circuit precedent which upholds the *State v. Perry* doctrine.

The Report also distinguishes *Cone v. Bell* on the law, not the facts. The Supreme Court

---

[2] Article III of the Constitution grants the Supreme Court original (i.e. trial as opposed to appellate level) jurisdiction in cases between two States.

[3] As with the usage "mentally retarded" in *Atkins v. Virginia,* 536 U.S. 304 (2002), for which the Supreme Court has substituted "intellectually disabled" in more recent cases, the Magistrate Judge assumes some more culturally respectful usage might now be adopted. "Indian" is preserved from a sense of accurate quotation of Justice White.

[4] The undersigned had the privilege of studying *res judicata* with both Professors Richard Field and Benjamin Kaplan, albeit from an earlier edition of this casebook.

in that case found that Tennessee courts will not consider the merits of a constitutional claim on collateral attack if (1) they have already ruled once on the merits or (2) the defendant has voluntarily waived such a determination (Report, ECF No. 14, PageID 2495, citing 556 U.S. at n. 8).  As explained in the Report, that is not the Ohio law.  Rather, the Ohio Supreme Court follows *State v. Perry* and precludes collateral attacks on judgments which could have been raised on direct appeal.  In a sense Bolling's objection is correct:  the Magistrate Judge did "refuse" to apply *Cone v. Bell.*  But that is because *Cone v. Bell* is not properly applicable.  The Supreme Court did not command that other States must follow the Tennessee model and Ohio does not.

In sum, Bolling's objections to the Report's deferring to the Second District's refusal to reach the merits of his first four Grounds for Relief on the basis of *res judicata* are not well taken and should be overruled.

**Ground Five: Ineffective Assistance of Trial Counsel**

In his Fifth Ground for relief, Bolling claims he received ineffective assistance of trial counsel when his trial attorney did not adequately investigate his case and, in particular, did not hire an expert to forensically analyze a tape recording of a conversation between Bolling and the victim.

Bolling first raised this claim in the petition for post-conviction relief under Ohio Revised Code § 2953.21 which he filed after the *Nunc Pro Tunc* Judgment was entered.  The Ohio courts refused to reach the merits of this claim on the ground that the post-conviction claim was untimely; because the claim related to counsel's conduct at trial in 2003, it was required to be brought within the statute of limitations with respect to the original conviction (Judge Langer's Decision is at State Court Record, ECF No. 8-1, Ex. 102; the Second District's Decision is at Ex. 106).

Petitioner argued this was in error because the *Nunc Pro Tunc* Judgment was the binding judgment in the case and the statute of limitations should have run from its entry in February 2018

(Reply, ECF No. 13, PageID 2443-44.).

The Report held this claim was procedurally defaulted because the Ohio court found it was untimely and this Court was obliged to defer to the state courts' interpretation of the Ohio statute of limitations in question (Report, ECF No. 14, PageID 2496-97). Bolling objects "The report and recommendation fails to address why the 2018 judgment should not be applied as the binding judgment from which the statute of limitations should run." (ECF No. 15, PageID 2507).

To make the matter more explicit, the Report says that when the Ohio statute of limitations begins to run is a question of Ohio law. Federal courts sitting in habeas corpus are bound by state court interpretations of state law. (Report, ECF No. 14, PageID 2496, citing *Bradshaw v. Richey*, 546 U.S. 74 (2005)).

It appears Bolling may be misconstruing *Magwood* as applying to a **state** statute of limitations. It does not. *Magwood* re-sets the date from which the **federal** statute of limitations runs; it has no impact on state statutes of limitations. There is no question that Bolling filed the instant Petition within the federal statute of limitations, to wit, within one year of when the *Nunc Pro Tunc* Judgment became final on direct appeal. But neither *Magwood* nor any of its progeny purports to have any impact on a **state** statute of limitations or to require as a matter of federal constitutional law that the state statute on collateral attacks begin to run anew from such an amended judgment.

Bolling's objection on Ground Five should be overruled.

**Ground Six: Failure to Disclose Exculpatory Material**

In his Sixth Ground for Relief, Bolling claims his right to a fair trial and due process of law were violated by the State's failure, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), to produce before trial the original audiotape of a recorded conversation between him and the victim. In other

words, he seeks to be released from imprisonment on the basis of *Brady*.

Respondent argued this claim was procedurally defaulted by Bolling's failure to fairly present it as a federal constitutional claim to the Ohio courts and the Report accepted that conclusion (ECF No. 14, PageID 2502-03). Given Bolling's Objections, a more thorough analysis of this claim is required.

Under Ohio criminal practice, a motion for new trial on the basis of newly-discovered evidence must be made with 120 days of the verdict. After that a defendant must obtain leave of court to file a delayed motion for new trial. Ohio R. Crim. P. 33(B). There is no absolute time limit on motions for leave to file a delayed motion for new trial. *State v. Davis*, 131 Ohio St. 3d 1 ¶ 27 (2011). Rather a defendant must show due diligence both in discovering the new evidence and presenting it to the trial court.

Bolling first presented his newly-discovered evidence claim in a motion for leave to file a delayed motion for new trial,[5] which he filed October 25, 2018 (State Court Record, ECF No. 8-1, Ex. 98). The new evidence in question is a forensic analysis of the audiotape. Judge Langer held Bolling had not shown he had been "unavoidably prevented" from obtaining the audiotape in question and having it analyzed for the more than fourteen years that had expired since the deadline set in Crim. R. 33(B) which he calculated as November 30, 2003 (Decision and Entry, State Court Record, ECF No. 8-1, Ex. 102, PageID 1013). On appeal the Second District held

> [*P22] In this case, almost 15 years after his verdict was rendered, Bolling simultaneously filed a motion for leave to file a delayed motion for new trial and a corresponding motion for new trial. Because his motion for new trial was clearly untimely, as part of his motion for leave, Bolling was required to demonstrate that he was unavoidably prevented from timely filing his motion for new trial. As previously noted, "a party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have

---

[5] He accompanied that motion with an actual motion for new trial, but the Second District found this immaterial.

learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence." *Walden* at 145-146.

[*P23] Here, Bolling's motion for new trial was based on newly obtained evidence from a forensic audio expert who analyzed the audiotaped telephone conversations between Bolling and the victim. The pertinent portion of the expert's analysis concluded that there were previous statements on the audio recording that had been "deleted, erased over or otherwise omitted." However, after a thorough review of the record, we find that even without the newly obtained expert analysis, Bolling was aware of the fact that there were previously recorded statements on the audiotape before his trial.

[*P24] The record establishes that Bolling received the audiotape from the State prior to trial. After receiving the audiotape, the record indicates that on May 8, 2003, Bolling filed a motion in limine in which he moved the trial court to suppress the admission of the audiotape on grounds that the "the tape may have been tampered with." Motion in Limine Suppressing State's Witness and Evidence (May 8, 2003), Montgomery C.P. No. 2003-CR-0073, p. 1. Thereafter, on July 29, 2003, Bolling also filed a pretrial motion for an evidentiary hearing in which he argued the following:

> Previously it was disclosed that the same detective left an undisclosed number of tapes with the complaining witness and her mother and instructed them to tape the defendant's conversations. It is unclear how many tapes the detective left with the complainant and her mother and it is unclear what instructions he gave them but it is uncontroverted that the complainant's mother and perhaps the complainant taped a least one conversation and then used the same tape to tape over it. The Defendant, if called to testify for the limited purpose of this issue, would testify as to the nature of the conversations that were probably taped and the topics thereof. It is submitted that the Defendant's remarks and the topics discussed during the erased conversations were exculpatory in nature.

(Emphasis added.) Motion and Demand for Evidentiary Hearing (July 29, 2003), Montgomery C.P. No. 2003-CR-0073, p. 2. Therefore, the record indicates that Bolling had knowledge of the existence of the ground supporting his motion for new trial as early as May or July 2003.

10

[*P25] The fact that Bolling was aware of the issue with the audiotape during trial was also alluded to in several of his post-conviction motions. In his 2008 motion to access the audiotape under R.C. 149.43, Bolling noted that "the creation of these tapes were erased in the creation of the tape [that] was ultimately used in evidence." was not only in dispute, but the complaining witness almost inadvertently let slip during cross examination that, in fact, several phone conversations were recorded and some Similarly, in the motion for new trial at issue in this appeal, Bolling also noted that he "testified at trial about these other conversations, in fact he testified that there were more than 20 conversations with [the victim's mother] during the time period in which the recording was made" and "that there was an extensive conversation with [the victim] in the so-called 'confrontation tape' call prior to her turning the recorder on."

[*P26] Although Bolling had longstanding knowledge of the ground supporting his motion for new trial, Bolling provides no reasonable excuse for why it took him over 14 years to obtain the audiotape and have it analyzed. The record indicates that Bolling did not request the audiotape for forensic analysis until 2008 when he filed his R.C. 149.43 motion. Bolling therefore waited five years after his conviction to request the audiotape. Bolling fails to explain why he never attempted to obtain the audiotape earlier so that he could have addressed it in his first motion for new trial, which he filed in 2006.

[*P27] The record also indicates that in September 2010, Bolling's brother and two other individuals successfully obtained copies of the audiotape as part of a Freedom of Information Act request, but then took no action on the matter for six years. It was not until September 2016, that Bolling's brother filed a subsequent motion requesting the original audiotape on grounds that the copy provided by the court administrator was insufficient for audio analysis. Bolling provided no explanation for the six-year delay. Although Bolling averred that his brother was able to obtain a sufficient copy of the audiotape in April 2017, Bolling fails to explain why a sufficient copy of the audiotape could not have been requested and obtained earlier.

[*P28] For the foregoing reasons, the trial court did not abuse its discretion in overruling Bolling's motion for leave to file a delayed motion for new trial. More specifically, it was not unreasonable for the trial court to find that Bolling was not unavoidably prevented from filing his motion for new trial when, for over 14 years, Bolling knew about the issue with the audiotape on which his motion for

11

>  new trial was based and failed to request and obtain a copy of the audiotape for analysis within a reasonable time.

*State v. Bolling*, 2019-Ohio-4093.

The Report analyzed Bolling's Ground Six as a claim for failure to disclose exculpatory material under *Brady* and in his Objections, Bolling emphatically affirms that characterization (Objections, ECF No. 15, PageID 2507-08). The Report also concluded, as Respondent had argued, that this *Brady* claim had not been fairly presented to the state courts (Report, ECF No. 14, PageID 2498).

Bolling objects that this conclusion is "absurd and devoid of support in the record." (Objections, ECF No. 15, PageID 2507). He claims he cited *Brady* and its progeny several times in his motion for new trial and thus fairly presented a *Brady* claim to the Ohio courts. *Id.* This argument places Bolling on the horns of a dilemma. If he in fact fairly presented a *Brady* claim to the Ohio courts, then the Second District is presumed to have decided that claim and its decision is entitled to deference under 28 U.S.C. § 2254(d)(1). *Harrington v. Richter,* 562 U.S. 86, 100 (2011); *Brown v. Payton,* 544 U.S. 133, 141 (2005); *Bell v. Cone,* 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000); *Ross v. Pineda,* 2013 U.S. App. LEXIS 25481 (6th Cir. 2013), *quoting Johnson v. Williams,* 568 U.S. 289, 301 (2013). If, on the other hand, Bolling did not fairly present a *Brady* claim to the state courts, then the claim is procedurally defaulted as the Report concluded was the case.

In support of his Objections, Bolling asserts "The motion for a new trial contained numerous citations to and arguments regarding *Brady v. Maryland*, 373 U.S. 83 (1963)(Doc. 8-1, PageID # 955, 957-58). Petitioner also relied on *Kyles v. Whitley*, 514 U. S. 419 (1995)(Doc. 8-1, PageID #958) which applies the *Brady* standard." (ECF No. 15, PageID 2507).

At PageID 955 Bolling cites *Brady* in the context of claiming that his newly-discovered

evidence, the forensic analysis of the tape by Herbert Joe,

> clearly refutes the State's assertion that there were not other conversations taped and not produced. Clearly there were other conversations that the State never turned over to the Defense and which the State's agents destroyed in a pursposeful [sic] effort to ruin potentially exculpatory material in violation of Defendant's right to due process and a fair trial.

*Id.* citing *Brady*. In other words, Bolling is trying to use his new evidence, the forensic analysis of the tape, to prove that the original tape contained *Brady* material. A new trial, if granted, would have featured cross-examination of the complaining witness about other conversations she had with Bolling which are apparently not reproducible from the audiotape.

Thus Bolling's claim that there used to be *Brady* material on the tape was presented to Judge Langer and the Second District as an underlying claim to the motion for new trial. Bolling did not ask Judge Langer to release him on the basis of *Brady*, but rather to give him a new trial at which he could prove destruction of *Brady* material by the State or at least undermine the credibility of the complaining witness. By its very nature, a motion for new trial is not an attack on a criminal judgment so as to have it set aside and obtain release, as a petition for post-conviction relief or state habeas corpus would be.

At the same time as his motion for new trial, Bolling filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 (State Court Record, ECF No. 8-1, Ex. 99). In that Petition he does not assert a *Brady* claim, i.e., a claim that he is entitled to be released because the State failed to disclose *Brady* material. Instead, his claim is that he received ineffective assistance of trial counsel:

> 22. ln this case, Bolling made a diligent effort to obtain the evidence herein, but was prevented from discovery. Trial counsel failed to retain an audio expert at trial to refute the claims of the State that the tape was unaltered and authentic, despite making assertions that the

13

>tape had been altered. But for the ineffective assistance of trial counsel, the evidence attached hereto could have been discovered at trial. (Bolling Aff. ¶¶ 6-8).

(State Court Record, ECF No. 8-1, PageID 975.)

Again in the same Petition Bolling sets out his First Ground for Relief as follows:

>35. Bolling's conviction and sentence arc void/or voidable because defense **counsel provided ineffective assistance at trial.** The Sixth and Fourteenth Amendments to the United States Constitution guarantee a criminal defendant the right to the effective assistance of counsel. Pursuant to *Strickland v. Washington*, 466 U.S. 668, 687 (1984) to prevail on an ineffective assistance of counsel claim, the appellant must demonstrate both ( l) deficient performance, i.e., performance fallen below an objective standard of reasonable representation, and (2) resulting prejudice, i.e., error on the part of counsel of a nature so serious that there exists a reasonable probability that., in the absence of those errors, the result of the trial court would have been different. *State v. Bradley*, 42 Ohio St. 3d 136, 538 N.E.2d 373 (1989). Regarding counsel's performance, reviewing courts must "conduct an objective review ... measured for 'reasonableness under prevailing professional norms; which includes a context dependent consideration of the challenged conduct as seen from counsel's perspective at the time.'" *Wiggins v, Smith*, 539 U.S. 510, 523 (2003) (quoting *Strickland*, 466 U.S. At 688). Regarding establishing prejudice, a reasonable probability is a probability sufficient to undermine confidence in the outcome, which is less than a preponderance of the evidence. *Strickland*. 466 U.S . at 694 (unreliability or unfairness can be demonstrated "even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome").

*Id.* at PageID 978 (emphasis supplied). This is an ineffective assistance of trial counsel claim or ground for relief, not a *Brady* claim and it is the only Ground for Relief pleaded in the Post-Conviction Petition.

Bolling anticipated that the State would argue that the Common Pleas Court did not have jurisdiction of this Petition because it was a second or successive state petition. He attempted to preempt that argument by citing *Darrian v. Scioto Conservation Dist.*, 27 Ohio St. 2d 102 (1971)(Post-Conviction Petition, ECF No. 8-1, Ex. 99, PageID 977).

14

Judge Langer decided the Petition for Post-Conviction Relief in the same Order in which he denied the Motion for New Trial (Final Appealable Order, State Court Record, ECF No. 8-1, Ex. 102). He concluded instead that the time limit in Ohio Revised Code § 2953.21 was jurisdictional and the entry of a *nunc pro tunc* judgment did not re-set that time. *Id.* at PageID 1013.

On appeal the Second District read Bolling's post-conviction Petition as the Magistrate Judge has read it above: presenting an ineffective assistance of trial counsel claim and not a *Brady* claim. *Bolling*, 2019-Ohio-4903, ¶ 14. As his Second Assignment of Error, Bolling asserted Judge Langer had erred in dismissing his post-conviction petition. The Second District ruled as follows:

> [*P31] Under his second assignment of error, Bolling contends that the trial court erred in denying his petition for post-conviction relief. Specifically, Bolling contends that the trial court incorrectly determined that his petition was untimely and that the trial court lacked jurisdiction to rule on the petition. We disagree.
>
> [*P32] "When a direct appeal of the judgment of conviction has been taken * * *, a petition for post-conviction relief must be filed no later than 365 days 'after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication.'" *State v. Baker*, 2d Dist. Montgomery No. 27596, 2017-Ohio-8602, ¶ 12, quoting R.C. 2953.21(A)(2). "Trial courts lack jurisdiction to consider an untimely or successive petition for post-conviction relief, unless the untimeliness is excused under R.C. 2953.23(A)." Id., citing *State v. Current*, 2d Dist. Champaign No. 2012 CA 33, 2013-Ohio-1921, ¶ 16.
>
> [*P33] "Pursuant to R.C. 2953.23(A)(1)(a), a defendant may not file an untimely or successive petition for post-conviction relief unless (1) the defendant was unavoidably prevented from discovering the facts upon which he or she relies to present the claim, or (2) the United States Supreme Court recognizes a new federal or state right that applies retroactively to his or her situation and the petition asserts a claim based on that right." *Id.* at ¶ 13. "The petitioner must also show by clear and convincing evidence that, if not for the constitutional error from which he suffered, no reasonable factfinder would have found him guilty." *Id*., citing R.C. 2953.23(A)(1)(b). "We review trial court decisions on petitions for

post-conviction relief under an abuse of discretion standard." (Citations omitted.) *State v. Perkins*, 2d Dist. Montgomery No. 25808, 2014-Ohio-1863, ¶ 27.

[*P34] In this case, Bolling filed his petition for post-conviction relief after filing a direct appeal from his conviction. A transcript of the trial court proceedings was filed with this court in Bolling's direct appeal on May 17, 2004. Bolling's petition for post-conviction relief was filed over 14 years later on October 25, 2018. Therefore, Bolling's petition was clearly filed beyond the 365-day time limitation set forth in R.C. 2953.21(A)(2).

[*P35] Bolling, however, argues that his petition was timely filed because the nunc pro tunc sentencing entry filed on February 5, 2018, reset the time from which the 365-day deadline is counted. Bolling is wrong. A nunc pro tunc entry is "used only to correct clerical errors, such as a mistake or omission that is mechanical in nature and apparent on the record and which does not involve a legal decision or judgment." *State v. Day,* 2d Dist. Greene No. 2012 CA 0011, 2012-Ohio-4620, ¶ 14. Therefore, a nunc pro tunc entry does not resentence the defendant. See id.; *State v. Hill,* 2d Dist. Montgomery No. 26581, 2015-Ohio-5166, ¶ 22.

[*P36] Although the trial court did resentence Bolling to the proper term of post-release control, only the post-release control portion of Bolling's original sentence was void. *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 26. "[A] sentence that is void because it does not properly include post-release control 'd[oes] not "restart the clock" to extend [the] time to file a post-conviction relief petition.'" *State v. Dawson*, 2d Dist. Greene No. 2012-CA-54, 2013-Ohio-1817, ¶ 11, quoting *State v. Casalicchio*, 8th Dist. Cuyahoga No. 89555, 2008-Ohio-2362, ¶ 22. Therefore, Bolling's claim otherwise lacks merit.

[*P37] Bolling also claims that even if his petition for post-conviction relief was untimely, the trial court had jurisdiction to review it because he was unavoidably prevented from discovering the facts upon which the claim in his petition was based. When dealing with petitions for post-conviction relief, "[t]he phrase 'unavoidably prevented' means that a defendant was unaware of those facts and was unable to learn of them through reasonable diligence." *State v. Rainey*, 2d Dist. Montgomery No. 23851, 2010-Ohio-5162, ¶ 13, quoting *State v. McDonald*, 6th Dist. Erie No. E-04-009, 2005-Ohio-798, ¶ 19.

16

> [*P38] In this case, Bolling's petition for post-conviction relief alleges that his trial counsel was ineffective in failing to investigate the authenticity and credibility of the audiotape and by failing to retain an audio expert to examine the audiotape. However, as discussed under Bolling's first assignment of error, the record indicates that, prior to trial, Bolling and his trial counsel knew of the existence of the audiotape, had a copy of the audiotape, and were aware of the fact that the victim had taped over prior conversations on the audiotape. Most importantly, Bolling was aware of the fact that his trial counsel did not obtain an audio expert to review the audiotape prior to trial.
>
> [*P39] Although Bolling did not obtain the audio expert's report until 2018, the record nevertheless establishes that, for over 14 years before fling his petition, Bolling knew about the issue with the audiotape and knew that his trial counsel had not obtained an audio expert for trial. Furthermore, the record does not establish that Bolling was unable to obtain the expert's report through reasonable diligence, as Bolling waited five years after his conviction to request the audiotape for analysis and then failed to consistently pursue the matter over the next nine years. Therefore, we cannot say that the trial court abused its discretion in finding that Bolling was not unavoidably prevented from discovering the facts upon which the claim in his petition for post-conviction relief was based.
>
> [*P40] For the foregoing reasons, Bolling's second assignment of error is overruled.

*Id.* Thus the Second District affirmed Judge Langer's decision that he did not have jurisdiction to reach the merits of any claim made in Bolling's post-conviction petition – *Brady* or ineffective assistance of trial counsel. On that basis as well, Bolling's Sixth Ground for Relief is procedurally defaulted.

Even if Bolling's *Brady* claim were not procedurally defaulted, however, it is without merit. Under *Brady* the State has a duty to produce exculpatory evidence in a criminal case. If the State withholds evidence and it is material, the conviction must be reversed. To achieve this goal, "*Brady* held that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of

17

the good faith or bad faith of the prosecution." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995) (quoting *Brady*, 373 U.S. at 87). What, then, is it that Bolling claims constitutes *Brady* material? Obviously it is not the forensic audiotape analysis which was created at Bolling's instance and did not exist until many years after trial. Is it the original audiotape itself? The Ohio courts have repeatedly held, without contradiction, that the tape was produced to Bolling and his counsel before trial and counsel filed a motion *in limine* to exclude it, although he did not have it forensically examined.

Bolling seems to be claiming that there was content to the recorded conversations between him and the victim which were exculpatory and therefore *Brady* material. But Bolling was a party to those conversations and their content was thus known to him. *Brady* "is concerned only with cases in which the government possesses information which the defendant does not, and the government's failure to disclose the information deprives the defendant of a fair trial." *United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994). There is no *Brady* violation where the defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information or where the evidence is available to the defendant from another source. *United States v. Clark*, 928 F.2d 733, 738 (6th Cir.), *cert. denied,* 502 U.S. 846 (1991). No *Brady* violation occurs where the government does not disclose witness statements but the defendant knew that the witness had potentially exculpatory information. *United States v. Todd,* 920 F.2d 399, 405 (6th Cir. 1990). Having been a party to the conversations, Bolling could have furnished his counsel, for use in cross-examination any impeaching statements made by the complaining witness, at least as he recalled them. For that matter, as a participant in the telephone calls, he was as free as she was to record them.

Bolling seems to be claiming that the police were under a duty to require the complaining witness to use an audiotape only once. When dealing with the failure of the state to preserve

18

evidence which could have been subjected to tests which might have exonerated the defendant, there is no due process violation unless the defendant can show bad faith on the part of the police. *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988).  Bolling claims all kind of bad faith by the police, but has presented no evidence of it.  The forensic analysis he presents did not uncover any exculpatory evidence on the tape.  Rather, if it had existed at the time of trial, it would have undermined the victim's testimony that the portion played for the jury was "full and accurate." (See Expert Report, attachment to Motion for New Trial, State Court Record, ECF No. 8-1, PageID 961-68).

Bolling's Sixth Ground for Relief is barred by procedural default and is also without merit.

**Conclusion**

Having reconsidered the Report in light of the Objections, the Magistrate Judge again respectfully recommends that the Petition be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

October 18, 2020.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.